OPINION
{¶ 1} Defendant-appellant Larry Knepp appeals his conviction and sentence from the Alliance Municipal Court on one count of violating Chapter 1721, Sections 4.0 and 4.14 of the Alliance City Ordinance. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 24, 2006, appellant was arrested and charged with a Housing and Health Violation under Alliance City Ordinance Chapter 1721,[1] a misdemeanor of the first degree. At his arraignment on April 26, 2006, appellant entered a plea of not guilty.
 {¶ 3} Thereafter, a jury trial commenced on August 17, 2006. At the trial, Duane Oyster, a sanitarian with the Alliance City Health Department, testified that during an inspection of appellant's property on November 28, 2005, he found overgrowth in the rear yard and a "large quantity of materials, including at least one inoperable motor vehicle." Transcript at 28. Oyster further testified that there was a motor vehicle in the alley that was damaged and had flat tires and that there were "[o]ther miscellaneous items made of metal and other materials, large quantities in the rear yard area." Transcript at 29. As a result of the inspection, appellant received a notice that he was violating Chapter 1721, Sections 4.0 and 4.14 of the Alliance City Ordinance: The notice stated as follows:
 {¶ 4} "The violations are as follows: Health and Housing Violations, Chapter 1721, Sections 4.0 and 4.14 . . . Accumulations of junk and debris in the yard area, including inoperable vehicles, parts and power equipment, and excess vegetative growth is creating nuisance conditions and conditions favorable for rodent harborage. *Page 3 
High weed growth and vegetation overgrowing stored material must be cut and removed from the premises. All junk and debris, including old appliances, scrap metal, car parts frames, inoperable vehicles and power equipment, must be removed from the property or stored indoors. All wood must be stored neatly stacked."
 {¶ 5} Oyster further testified that, in January of 2006, he inspected appellant's property again and that minimal work had been done to resolve the problems. According to Oyster, there remained a lot of debris, inoperable vehicles, at least one old appliance, auto parts, metal items and "excessive vegetative growth". Transcript at 34. Oyster indicated that the "vegetative growth" was taller than ten (10) inches. An additional notice of violation was sent to appellant dated January 24, 2006 that indicated there were "nuisance conditions" created by the accumulation of junk and debris and the excessive vegetative growth on appellant's property. After appellant still failed to comply, Oyster mailed appellant a letter on April 13, 2006 asking appellant to contact him before a lawsuit was filed. When asked how many times he had inspected appellant's property, Oyster testified that he had been to appellant's property a half dozen or so times between November of 2005 and the day of the trial. The following testimony was adduced when Oyster was asked about the condition of the property during each of the visits:
 {¶ 6} "A. From the time that the initial notices were sent out until early this week, there was not substantial change other than sometime in the last month, the vehicle that was along the alleyway was removed. There was a minor amount of cleaning and weed cutting that was done. And then two days ago, a roll-off container was moved in and there's been quite a bit of material that has been moved into the roll-off recently. *Page 4 
 {¶ 7} "Q. Now if you were there today, what specifically did you notice different today from January the 24th of the year 2006?
 {¶ 8} "A. There was more vegetation removed." Transcript at 33.
 {¶ 9} At trial, Oyster testified that the condition of appellant's property concerned him because "when you get that amount of material, there's a potential for rodent harborage." Transcript at 35.
 {¶ 10} On cross-examination, Oyster testified that he did not have any direct evidence that there were any type of rodents on appellant's property and that he was unaware of any food waste, accidents or fires or obnoxious odors from appellant's property.
 {¶ 11} On redirect, Oyster testified as follows when asked the basis for his citation on appellant's property:
 {¶ 12} "A. The accumulation of the debris and junk that was on the property and the excessive vegetative growth.
 {¶ 13} "Q. And what would be the problem with someone having an accumulation of debris and that? Why is that a problem?
 {¶ 14} "A. Because of conditions that aren't typical of what is expected in properties that are close to each other and a potential for the rodents to hide in the debris.
 {¶ 15} "Q. But what else is there? What's the section talk about?
 {¶ 16} "A. That the exterior property areas are supposed to be free of nuisances.
 {¶ 17} "Q. Okay." Transcript at 53. *Page 5 
 {¶ 18} At the conclusion of the State's case, appellant made a Crim.R. 29 motion for a judgment of acquittal. Appellant's motion was denied. On August 17, 2006, the jury found appellant guilty. As memorialized in a Judgment Entry filed the same day, appellant was sentenced to thirty (30) days in jail, with all except ten (10) days suspended, and fined $250.00.
 {¶ 19} Appellant now raises the following assignment of error on appeal:
 {¶ 20} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 21} Appellant, in his sole assignment of error, argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 22} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 23} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact *Page 6 
clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. "The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 24} In the case sub judice, appellant was convicted of violating Chapter 1721 Sections 4.0 and 4.14 of the Alliance City Ordinance. Such sections state as follows:
 {¶ 25} "Section 4.0 Minimum Sanitation Standards — No person shall occupy as owner-occupant, or let to another for occupancy any dwelling or dwelling unit, for the purpose of living, sleeping, cooking, or eating therein, which does not comply with the following requirement:
 {¶ 26} "4.14 — Exterior property areas and accessory structures shall be free from health, fire and accident hazards, uncontained garbage and refuse, and vermin, insect and rodent harborage and conditions whichmight create a nuisance." (Emphasis added)
 {¶ 27} As is set forth above, testimony was adduced at trial that the accumulation of items on appellant's property, including old appliances, motor vehicles, along with the vegetative growth that was taller than ten inches in height created conditions that "might create a nuisance." At trial, Duane Oyster, who is a registered environmental health specialist and sanitarian and who was the only witness to testify at trial, testified that *Page 7 
such conditions created the potential for rodent harborage and that such conditions might create a nuisance. Oyster testified that rodents "like overgrown areas and areas filled with debris for being able to hide and to rest" and that rodents were "more prevalent in areas that are overgrown and filled with debris." Transcript at 35. There was no evidence to the contrary.
 {¶ 28} Based on the foregoing, we find that any rational trier of fact could have found that appellant violated Chapter 1721, Sections 4.0 and 4.14 of the Alliance City Ordinance. We further find that the jury, as trier of fact, did not create a miscarriage of justice in finding appellant guilty. As trier of act, the jury was in the best position to assess Oyster's credibility. Clearly, they found him to be a credible witness.
 {¶ 29} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 30} Accordingly, the judgment of the Alliance Municipal Court is affirmed.
By: Edwards, J. Gwin, P.J. and Hoffman, J. concur *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Alliance Municipal Court is affirmed. Costs assessed to appellant.
[1] Chapter 1721 contains the Housing regulations of the Alliance City Board of Health. *Page 1